382 F.2d 940
 STILLPASS TRANSIT COMPANY, Inc., Plaintiff-Appellee,
v.
OHIO CONFERENCE OF TEAMSTERS AND LOCAL UNION 103, Affiliated
with the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of
America, Defendants-Appellants.
 No. 17051.
 United States Court of Appeals Sixth Circuit.
 Sept. 7, 1967.
 
 Victor I. Smedstad, Dayton, Ohio, (Robert C. Knee, Victor I. Smedstad, Dayton, Ohio, on the brief), for appellants.
 Arnold Morelli, Cincinnati, Ohio (Nicholas Bauer, Cincinnati, Ohio, on the brief), for appellee.
 Before O'SULLIVAN, and PHILLIPS, Circuit Judges, and McRAE, District Judge.*
 PHILLIPS, Circuit Judge.
 
 
 1
 This is an appeal under 28 U.S.C. 1292(a) from the order of the District Court refusing to grant a stay of the proceedings pending arbitration. We treat it as an appeal from an interlocutory order refusing to issue an injunction.
 
 
 2
 The action was brought under 301(a) of the Labor Management Relations Act, 29 U.S.C. 185(a), seeking damages for the breach of a no-strike clause of a collective bargaining agreement. The complaint alleges that the defendant-appellant, Local Union 103 affiliated with the International Brotherhood of Teamsters, with the approval and consent of defendant-appellant International Brotherhood of Teamsters and the Ohio Conference of Teamsters, struck the plaintiff-appellee's place of business from July 21, 1963, to June 5, 1964. The complaint also alleges various facts which, if proven, could be contract violations, i.e., that defendants were unwilling to discuss employee grievances or the reason for the strike; that defendants caused employees to instigate law suits against plaintiff; that representatives of the defendants informed plaintiff that defendants intended to put plaintiff out of business and that defendants would not settle any grievances which might be existing against plaintiff; and that defendants refused the many demands made by plaintiff that the parties meet in an effort to settle and end the strike.
 
 
 3
 Defendants moved to dismiss the complaint or in the alternative to stay the proceedings in the District Court pending the outcome of the submission of the problems to arbitration.
 
 
 4
 The District Court refused to grant the stay pending arbitration, holding that the rule is 'in this circuit that violation of the no-strike clause in a collective bargaining agreement does not constitute a 'grievance", citing Vulcan-Cincinnati, Inc. v, United Steelworkers, 289 F.2d 103 (C.A.6); International Union, United Automobile Aircraft v. Benton Harbor Malleable Industries, 242 F.2d 536 (C.A.6), cert. denied, 355 U.S. 814, 78 S.Ct. 15, 2 L.Ed.2d 31; and Hoover Motor Express Co. v. Teamsters, Chauffeurs, etc., 217 F.2d 49 (C.A.6). We do not reach the question of whether, under the contract here involved, a breach of the no-strike clause is a grievance, nor do we reach the question as to whether it is the rule in this Circuit that the violation of a no-strike clause in a collective bargaining contract does or does not constitute a grievance. We affirm on other grounds.
 
 
 5
 Appellants contend that the complaint should be dismissed, Jefferson City Cabinet Co. v. International Union, Electrical Workers, 313 F.2d 231 (C.A.6), cert. denied, 373 U.S. 936, 83 S.Ct. 1539, 10 L.Ed.2d 690, or in the alternative that the subject matter of appellee's claim for relief is not expressly excluded from the grievance procedure in the contract and must therefore be submitted to the grievance procedure, prior to resorting to the courts. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462; Drake Bakeries, Inc. v. Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474; United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.
 
 
 6
 Whether a company is bound to arbitrate, as well as what issues it must arbitrate, are matters to be determined by the Court on the basis of the contract entered into by the parties. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462; United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. 'Just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so a fortiori, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all.' John Wiley & Sons, Inc. v. Livingston, supra, 376 U.S. at 547, 84 S.Ct. at 913.
 
 
 7
 Paragraph 8.1(f)[1] of the collective bargaining agreement provides that:
 
 
 8
 '(f) In the event of strikes, workstoppages or other activities which are permitted in case of deadlock, default, or failure to comply with majority decision, or in case of refusal to abide by the umpires' award, no interpretation of this Agreement by any tribunal shall be binding upon the Union or affect the legality or lawfulness of the strike unless the Union stipulates to be bound by such interpretation, it being the intention of the parties to resolve all questions of interpretation by mutual agreement or by umpire handling. Nothing herein shall prevent legal proceedings by the Employer where the strike is in violation of this Agreement.'
 
 
 9
 The contract provides that the employer can institute legal proceedings when the strike is in violation of the collective bargaining agreement. Paragraph 8(1)(f) provides that those strikes which are 'permitted' or not in violation of the agreement are those which are commenced after the grievance procedure has been instituted and has broken down, namely in cases of 'deadlock, default, or failure to comply with majority decision, or in case of refusal to abide by the umpires' award * * *' Under the facts presented it is apparent that the contract is not susceptible to a construction which would bind the employer to arbitrate his claim for damages for breach of a union's agreement not to strike. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462.
 
 
 10
 Although the record is less than clear, since no answer has been filed, it is apparent that the union has not made out its case for a stay pending arbitration. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462. Therefore the issue of whether the company is entitled to damages from the union for breach of contract is for the District Court to decide.
 
 
 11
 We hold that, on the basis of the averments of the complaint, plaintiff-appellee has the right under the terms of the contract here involved to maintain this action without first submitting the issues to arbitration.
 
 
 12
 Affirmed.
 
 APPENDIX
 ARTICLE 7
 Grievance Machinery Committee
 Section 7.1 Joint State Committees
 
 13
 The Employers and the Unions in each of the following states shall together create a permanent Joint State Committee for such state: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, and Wisconsin. The Unions and the Employers may create multistate committees. The Joint State Committee shall consist of an equal number appointed by Employers and Unions but no less than three (3) from each group. Each member may appoint an alternate in his place. The Joint State Committee shall at its first meeting formulate rules of procedure to govern the conduct of its proceedings. Each Joint State Committee shall have jurisdiction over disputes and grievances involving Local Unions or complaints by Local Unions located in its State.
 
 Section 7.2 Contiguous Territory
 
 14
 If a dispute or grievance arising out of operations under this Agreement involves a Local Union not a member of the Central Conference, situated in contiguous territory, such dispute or grievance shall be referred to any of the above Joint State Committee or multi-state committees for handling by the principal officer of the Central Conference of Teamsters, Petroleum Division, and after such reference shall be handled under the usual procedure of that Joint State Committee or multi-state committee.
 
 Section 7.3 Joint Area Committee
 
 15
 The Employers and the Unions shall together create a permanent Joint Area Committee which shall consist of the duly constituted delegates of the various Joint State Committees and/or multi-state committees as the case may be.
 
 Section 7.4 Function of Committees
 
 16
 It shall be the function of the various committees above-referred-to to settle disputes which cannot be settled between the Employer and the Local Union in accordance with the procedures established in Section 8.1 of Article 8.
 
 Section 7.5 Attendance
 
 17
 Meetings of all Committees above-referred-to must be attened by each member of such Committee or his alternates but the absence of any member or alternate shall not invalidate the action of the Joint Area Committee or a panel thereof.
 
 Section 7.6 Examination of Records
 
 18
 The Local Union, Joint State Committee, Multi-state Committee, or the Joint Area Committee shall have the right to examine time sheets and any other records pertaining to the computation of compensation of any individual or individuals whose pay is in dispute.
 
 Section 7.7 Jurisdiction
 
 19
 The Joint Area Committee shall have jurisdiction over: (a) Disposition of any grievance which cannot be settled at the lower level. (b) Interpretation or application of the provisions of this Master Agreement. (c) Negotiations of any additions, deletions or modifications of this Master Agreement during the term thereof which may be mutually agreed upon by both parties. (d) Formulation of rules and regulations for the purpose of administering this Master Agreement and its Addenda.
 
 ARTICLE 8
 Grievance Machinery and Union Liability
 Section 8.1
 
 20
 The Union and the Employer agree that there shall be no strike, lock-out, tie-up, or legal proceedings without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise. Grievances shall first be taken up between the Employer and the Local Union involved, provided, however, that all grievances must be made known in writing to the other party within thiry (30) days, unless otherwise mutually agreed to, after the reason for such grievance has occurred, or after the first date upon which the grievant should have become aware of the existence of such grievance, whichever is later except that such thirty (30) day time limitation shall not apply in those instances in which the Employer and an employee shall have agreed to a condition of employment contrary to that which is set forth in this Agreement. A duly authorized representative of the Employer or the Union must make a written disposition of the matter within ten (10) calendar days after submission of such written grievance. The Joint Area Committee shall set up agreed upon rules for the interpretation.
 
 
 21
 On failure of the Employer and the Local Union to resolve the grievance, either party may file the grievance with the Joint State Committee. The case shall be placed on the calendar to be heard at the next meeting of the Joint State Committee, in accordance with its rules of procedure.
 
 
 22
 The following appeal procedure shall apply:
 
 
 23
 (a) Where a Joint State Committee, by a majority vote, settles a dispute, no appeal may be taken to the Joint Area Committee. Such a decision will be final and binding on both parties; provided, however, the Joint Area Committee shall, upon the unanimous vote of the members thereof, have the right to review and reverse any decision of the Joint State Committee and make a final decision on the case if the Joint Area Committee has reason to believe the decision was not based on the facts as presented to the Joint State Committee or in the possession of either party and not presented to the Joint State Committee.
 
 
 24
 (b) Where a Joint State Committee or a multi-state committee is unable to agree or come to a decision on a case, it shall, at the request of the Union or the Employer involved, through the Secretary or Chairman, be appealed to the Joint Area Committee at the next regularly constituted session.
 
 
 25
 (c) It is agreed that all matters pertaining to the interpretation of any provision of this Contract may be referred, at the request of either the state secretary for the Union or the state secretary Employers, with notice to the other Secretary, to the Joint Area Committee at any time for final decision. The Joint Area Committee shall be convened on five (5) working days notice to handle maters so referred.
 
 
 26
 (d) Deadlocked cases may be submitted to umpire handling if a majority of the Joint Area Committee determines to submit such matters to an umpire for decision. Otherwise either party shall be permitted all legal or economic recourse.
 
 
 27
 (e) Failure of any Joint Committee to meet without fault of the complaining side, refusal of either party to submit to or appear at the grievance procedure at any state or Area, or failure to comply with any final decision withdraws the benefits of Article 8.
 
 
 28
 (f) In the event of strikes, work-stoppages or other activites which are permitted in case of deadlock, default, or failure to comply with majority decision, or in case of refusal to abide by the umpires' award, no interpretation of this Agreement by any tribunal shall be binding upon the Union or affect the legality or lawfulness of the strike unless the Union stipulates to be bound by such interpretation, it being the intention of the parties to resolve all questions of interpretation by mutual agreement or by umpire handling. Nothing herein shall prevent legal proceedings by the Employer where the strike is in violation of this Agreement.
 
 
 29
 (g) In the event that a State has not established a State Joint Committee, or is not a participant in a multi-state committee, appeal shall be taken directly to the Joint Area Committee.
 
 Section 8.2
 
 30
 It is further mutually agreed that the Local Union will, within two (2) weeks of the date of the signing of this Agreement, serve upon the Employer a written notice, which notice will list the Union's authorized representatives who will deal with the Employer, make commitments for the Union generally, and in particular have the sole suthority to act for the Union in calling or instituting strikes or any stoppages of work, and the Union shall not be liable for any activites unless so authorized. It is further agreed that in all cases of an unauthorized strike, slow-down, walk-out, or any unauthorized cessation of work in violation of this Agreement, the Union and the Central Conference of Teamsters shall not be liable for damages resulting from such unauthorized acts. While the Union shall undertake every reasonable means to induce such employees to return to their jobs during any such period of unauthorized stoppage of work mentioned above, it is specifically understood and agreed that the Company during the first twenty-four (24) hour period of such unauthorized work stoppage shall have the sole and complete right of reasonable discipline short of discharge, and such employees shall not be entitled to or have any recourse to any other provisions of this Agreement. After the first twenty- four (24) hour period of such stoppage and if such stoppage continues, however, the Company shall have the sole and complete right to immediately discharge any employee participating in any unauthorized strike, slow-down, walk-out, or any other cessation of work, and such employees shall not be entitled to or have any recourse to any other provisions of this Agreement. It is further agreed and understood that the Tank Truck Committee shall not be liable for any strike, breach or default in violation of this Agreement unless the Act is expressly authorized by its Executive Board. A properly designed officer of the Tank Truck Committee shall, within twenty-four (24) hours after request is made to the Secretary of the Committee, declare and advise the party making such request, by telegram, whether the Committee has authorized any strike or stoppage of work. The Tank Truck Committee shall make immediate effort to terminate any strike or stoppage of work which is not authorized by it without assuming liability therefor.
 
 
 31
 It is understood and agreed that failure of the Tank Truck Committee to authorize a strike by a Local Union shall not relieve such Local Union of liability for a strike authorized by it and which is in violation of this Agreement.
 
 Section 8.3
 
 32
 Notwithstanding anything herein contained, it is agreed that in the event any Employer is delinquent at the end of a period in the payment of his contribution to the Health and Welfare or Pension Fund or Funds, created under this Contract, in accordance with the rules and regulations of the Trustees of such Funds, after the proper official of the Local Union has given seventy-two (72) hours notice to the Employer of such delinquency in health and welfare or pension payments, the employees or their representatives shall have the right to take such action as may be necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom.
 
 
 
 *
 Honorable Robert M. McRae, Jr., Judge, United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Article 7, Grievance Machinery Committees, and Article 8, Grievance Machinery and Union Liability, are set out in full as an appendix